Shauok, J.
La Tourette sued the plaintiff in error in the court of common pleas, alleging that on the 14th day of August, 1880, he entered into a contract with the company, whereby it agreed to transport from G-alion, Ohio, to Halleck Station, Nevada, a threshing engine and separator for the charge of $575, and deliver the same at its destination within a reasonable time; that there was an unnecessary delay of thirty days in the transit of the machinery, and when it arrived he was compelled to pay $108 in excess of the agreed price before he could get possession of the property.
In his first cause of action he seeks to recover the amount of the excess so paid.
In the second cause of action he seeks a recovery of the damages sustained by him in consequence of the unnecessary delay in the delivery of the goods, averring in that regard that the use of the machinery during the thirty days was of the value of $600, and praying judgment therefor.
Upon the trial there was a verdict in favor of the plaintiff for the sum and interest claimed in the first cause of action, and upon the second cause of action damages in the sum of $621.25 were awarded, being in excess of the damages claimed in the petition.
As to the first cause of action, it is sufficient to say that the recovery was proper, whether the shipment was made upon the contract claimed by the plaintiff, or upon the contract set out in the bill of lading as claimed by the company, since in' both the company guaranteed the freight as claimed by the plaintiff.
As to the second cause of action :
The petition seems to us to be framed upon the true theory as to the damages recoverable for the delay in the shipment of the goods. But no evidence was introduced tending to show the value of the use of the machinery during the time the plaintiff was deprived of it. In the admission of evidence, and in the charge upon this point, the court proceeded upon the view that the measure of damages was the difference between the value of the machinery when delivered, and *281 when it ought to have been delivered. . But in these matters the court proceeded without objection by thé company.
We ought not, perhaps, to overlook the fact that, while for the purpose of making compensation interest on the original loss may be allowed as damages, the jury were not warranted in awarding greater damages than were alleged in the petition. If, however, the record is otherwise free from error, this may be corrected by remitting the excess.
The chief points of contention are .whether the court properly instructed the jury as to the legal effect of the bill of lading ; and whether it erred in overruling the motion for a new trial upon the ground that the verdict was against the evidence.
To the consideration of both questions attention to the evidence is necessary. As to most of the facts there is no dispute. La Tourette purchased his engine from Squire & Homer, of Galion, and solicited the services of Squire in getting rates for ail the machinery to Halleck Station. Squire negotiated concerning through rates with the receiving agents of the two carriers there having suitable connections with other carriers for making the shipment, a.nd finally accepted the proposition of this company, the rate fixed being substantially that alleged in the petition. These negotiations all related to the through rate, and the plaintiff did not participate in any of them, nor was the plaintiff’s interest in the machinery disclosed by Squire to the company’s agent. After the rate had been agreed upon, a car was placed upon the side track of Squire & Homer, where the machinery was loaded, billed and marked to Halleck Station. Immediately thereafter, and before the car was moved, Squire and the plaintiff went together to the company’s office, and Squire reported the weight of the machinery to the agent, who at once delivered to him a written and printed bill of lading in which the firm of Squire & Homer were named consignors. One of the printed stipulations in this bill is that the company should be liable only for the prompt and safe delivery of the machinery at Indianapolis, Ind., and to the next connecting carrier there. All the evidence shows that there was no unreasonable delay in transporting to Indianapolis and delivering to *282 the next connecting. carrier, and the jury could not have found otherwise.
The negotiations between Squire and the company’s agent related wholly to the through rate, and although he testifies that “ they were to deliver at Halleck,” this must be regarded as his conclusion touching the company’s liability, since upon careful examination as to the conversations he testifies to no stipulation looking to that liability. As to the knowledge of the parties of the printed stipulation relied upon by the company, Squire testifies in the first instance that he read and examined it, and subsequently that he did not read the entire bill and had no knowledge of this stipulation; that he handed the bill to La Tourette who read it in whole or in part. The latter testifies that he read only the written portions of the bill and had no knowledge of the stipulation relied upon.
Upon the trial the court gave to the jury the following instruction among others: “ Where the shipper and the railroad company have made a verbal agreement for the carriage of goods from one place to another, and the goods are delivered to the company under such verbal agreement and placed on its cars for transportation, and afterwards the company delivers to the shippers a bill of lading containing restrictions on its liability not embraced in the verbal agreement, the shipper may rely upon the verbal agreement, unless the contents of the bill of lading were brought to his knowledge and assented to by him before the goods had gone beyond his control.” The jury were further charged in substance, that if the goods were delivered under such verbal agreement, the bill of lading did not become the contract of shipment unless all its terms were known and assented to either by the plaintiff himself, or by Squire acting upon authority from the plaintiff to give such assent. The same view of the law pervades the entire charge, but these portions are embraced within definite-exceptions.
All the evidence shows that Squire & Homer, and not the plaintiff, were the consignors of the goods. The plaintiff, though present at some of the negotiations concerning through rates, did not in any wáy disclose his interest in the machinery He permitted Squire to conduct the negotiations *283 as though it concerned the property of his- firm. At the conclusion of the negotiations he accepted from Squire the bill of lading which the receiving agent of the carrier had delivered to him ; and in that bill, as the plaintiff knew, Squire and Homer were named as consignors.. The carrier could not, therefore, be required to look to any relation between the plaintiff and Squire to ascertain what authority had been given to the latter bv the former.
The plaintiff called upon Squire to aid him in this behalf for the purpose of getting the benefits of the reduced-rates supposed to be available to his firm as extensive shippers of machinery. To disclose his interest in the shipment would 'not have been consistent with that purpose, and it is not pretended that he in fact made such disclosure. The plaintiff’s right to maintain this action is conceded; but it can have no other foundation than the fact that he is the real party in interest. As such party he can insist only upon the rights which the contract between the carrier and the consignor afforded the latter. If the assent of the consignor to the terms of the bill of lading was necessary,' it was sufficient if the carrier procured such assent from the person with whom it was contracting.
In order that the bill of lading be regarded as the contract of shipment so as to conclude all prior negotiations; is any assent of the consignor necessary beyond that which is indicated by his acceptance of the bill and acquiescence therein? In the C. H. & D. R. R. Co. v. Pontius et al., 19 Ohio St., 221, the second proposition of the syllabus is: “A bill of lading signed by the company’s receiving agent, and accepted and acquiesced in by the consignor, is binding upon the latter, although not signed by him ; and the terms and conditions of the contract expressed therein cannot be contradicted by parol proof.” In the opinion the absence of fraud, deceit and mistake is treated as essential to this rule. This authority seems to be in all respects pertinent to the case under consideration. We perceive no difference in the facts which would call for the application of a different principle, nor is any suggested by counsel.
*284 It is, however, insisted that the charge and the recovery are justified by the authority of Gaines v. The Union Transportation and Insurance Co., 28 Ohio St., 418, where it was held that under the circumstances of that case it was essential that the consignor should have knowledge of the condition of the bill of lading, and that he should assent to them. It does not expressly overrule The Railroad v. Pontius, nor adversely criticize its doctrine. It is to be regarded rather as placing limitations to the application of the doctrine laid down in the earlier case. It discloses two facts of obvious legal import that are not found in the Pontius case or here.
(1.) The delivery of the bill of lading was not contemporaneous with the delivery of the goods for shipment, but occurred when the goods, having passed entirely beyond the control of the consignor, were in the course of actual transit. The evidence tended to show that the goods had been delivered and forwarded under an oral agreement whose terms covered the loss which the consignor there sustained; and that the bill of lading in which the carrier stipulated for a restricted liability, was not delivered until the goods had entered upon their transit, and objections by the consignor would have been unavailing.
Here the evidence all shows that when the bill of lading was delivered and accepted, the machinery was on the side track of the consignors, and completely subject to their control.
(2.) The bill of lading in the Gaines case contained stipulations whereby the common law liability of the carrier was restricted. That this fact was thought important is clear from the entire opinion, and especially from this extract: “The clear weight of authority is, that sound principles of public policy demand that the common carrier should be held strictly to his common law liability, unless it is limited by express agreement, and that the principles of law which create obligations ex contractu by an implied promise or constructive assent have no application to contracts limiting the liability of a common carrier.”
The common law liability of the carrier with reference to this consignment was to carry it to Indianapolis, and there *285 deliver it to the next connecting carrier. The evidence all shows that it discharged this liability. So far as this injury is concerned, the liability stipulated for by the carrier in the bill of lading is identical with its common law liability. Its only effect, therefore, is to exclude parol evidence of previous oral negotiations looking to an enlargement of the common law liability of the carrier. To conclude such negotiations is the proper and beneficient effect of every written contract. The Gaines case, proceeding in accordance with both reason and authority, holds that primarily the carrier is to be held to its common law liability, and that it can exempt itself therefrom only hy express agreement. The same consideration warrants the conclusion that a consignor relying upon an enlargement of that liability, must see to it that the stipulations to that end are carried into any bill of lading which may be delivered and accepted as the contract of shipment.
Harrison, Olds & Marsh, for plaintiff in error.
Powell & Ricketts, for defendant in error.
Giving full consideration to the cases referred to, we regard it as settled in this state that, in the absence of fraud and mistake, a bill of lading signed by the receiving agent of the carrier, containing no restriction upon its common law liability, delivered to the consignor contemporaneously with the receipt of the goods, and acquiesced in by him, becomes the contract of shipment, and its terms cannot be contradicted by parol.
It is perhaps worthy of notice that there is no evidence of a contract on the part of the carrier to carry beyond its own lines, unless it may be inferred from the fact that it accepted goods billed and marked to a point upon the line of another carrier. This fact was presented in The Railroad v. Pontius et al., and it was there held that if that fact would warrant the inference of a contract to deliver at the destination, such inference could not obtain against the stipulation of a bill of lading limiting the carrier’s liability to its own line.
As to the first cause of action the judgment will be affirmed; as to the second, it will be reversed with costs.